UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| LACEY L LEETE and ROBERT LEETE,<br><br>Plaintiffs,<br><br>v.<br><br>SMITH & NEPHEW, INC., a Delaware Corporation; SMITH & NEPHEW PLC, a foreign public limited company; ARTHROCARE CORPORATION, S.R.L., a foreign corporation; ARTHROCARE CORPORATION, a Delaware corporation; and DOES I-X, unknown parties,<br><br>Defendants. | Case No. 2:24-cv-00576-AKB<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Pending before the Court is Defendant Smith & Nephew, Inc.'s Motion to Dismiss Plaintiffs' First Amended Complaint (FAC) (Dkt. 13). The parties have fully briefed the issues, and the Court finds that oral argument would not materially assist the decisional process. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); Fed. R. Civ. P. 78(b). For the reasons discussed, the Court denies the motion.

## BACKGROUND

Plaintiffs Lacey and Robert Leete allege that the REGENETEN Bioinductive Patch implanted during Mrs. Leete's rotator cuff repair surgery failed prematurely and degraded, resulting in numerous loose "rice" fragments in her shoulder. When a second arthroscopic surgery was performed approximately eight months later, the surgeon removed roughly fifty such

**MEMORANDUM DECISION AND ORDER - 1**

fragments (Dkt. 6 ¶¶ 15–18). Plaintiffs assert claims for products liability-strict liability, products liability-negligence, and "negligent infliction of emotional distress/loss of consortium." Defendant moves to dismiss all claims under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

The FAC identifies the specific REGENETEN implant that was used by catalog number, lot number, and a use-by date of "2025-02-03" (Dkt. 6 ¶ 12). Plaintiffs allege that the device is designed to remain intact during the healing period and to reinforce the rotator cuff repair (Dkt. 6 ¶ 13). According to the FAC, Mrs. Leete's rotator cuff pain persisted following the procedure. An MRI revealed a subdeltoid bursa with synovitis, debris, fluid, a possible cartilaginous body, and a delamination-type tear (Dkt. 6 ¶ 16). During the revision arthroscopy, the surgeon removed approximately fifty loose ovoid fragments from the implant site (Dkt. 6 ¶ 18). Plaintiffs allege similar fragmentation or loose-body events involving this device have been reported in the FDA's MAUDE database since 2019 and were known or knowable to Defendant (Dkt. 6 ¶¶ 30–32). Plaintiff continued to experience restricted motion and mechanical symptoms following the revision and underwent a second repair surgery on February 23, 2024 (Dkt. 6 ¶¶ 21, 22).

## LEGAL FRAMEWORK

Under Rule 12(b)(6), a motion to dismiss for failure to state a claim on which relief can be granted tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). In assessing dismissal of claims under Rule 12(b)(6), the Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court need not accept as true conclusory allegations, unreasonable inferences, legal characterizations, or unwarranted deductions of fact or legal conclusions couched as facts. *Id.* at 678–79; *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009).

Generally, a district court may not consider any materials beyond the complaint when ruling on a Rule 12(b)(6) motion. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). If the court considers evidence outside the pleadings, it must convert a Rule 12(b)(6) motion into a motion for summary judgment under Rule 56. "A court may, however, consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## ANALYSIS

### A. Strict Liability and Negligence

Defendant argues the FAC does not identify a defect and asserts that Plaintiffs' theory is unclear as to whether a defect caused degradation; whether degradation itself is the defect; or whether the release of loose bodies constitutes the defect. Defendant further argues that Plaintiffs rely on conclusions rather than facts.

The FAC, however, pleads three alternative defect theories—design defect, manufacturing defect, and malfunction theory—in accordance with Rule 8(d)(2). Plaintiffs allege that the implant degraded and fragmented; approximately fifty loose fragments were surgically removed; the device failed within months of implantation despite being designed to remain in place throughout

the healing period; and similar fragmentation events have occurred previously and were known or knowable to Defendant (Dkt. 6 ¶¶ 13, 15–18, 30–32, 38). These are concrete factual allegations describing a specific malfunction and its consequences.

The court's analysis in *Elliott v. Smith & Nephew, Inc.*, No. 1:12-CV-0070-EJL-MHW, 2013 WL 1622659 (D. Idaho Apr. 15, 2013), supports Plaintiffs' approach. It expressly rejects the argument that a plaintiff must allege the precise internal mechanism of the medical device's failure at the pleading stage, recognizing that such information often lies within the defendant's control. Defendant attempts to distinguish *Elliott* by pointing to the recall and matching catalog numbers alleged there. Although those facts strengthened the complaint in *Elliott*, the decision did not impose them as prerequisites.

Defendant relies on *Green v. W. L. Gore & Assocs., Inc.*, No. 4:19-CV-00022-DCN, 2020 WL 1666790 (D. Idaho Apr. 3, 2020), but *Green* involved a complaint devoid of factual allegations regarding any malfunction. This case is far closer to *Elliott* than to *Green*. Plaintiffs identify a specific failure mode—premature degradation and fragmentation of the REGENETEN implant—and support it with alleged MRI findings which show debris, synovitis, and a possible cartilaginous body, as well as surgical observations in which approximately fifty loose fragments were removed from the implant site. Plaintiffs allege that the device was designed to remain intact during the healing period yet failed within eight months and that similar fragmentation events have been reported in publicly available MAUDE data. These factual allegations describe an observable malfunction and its consequences, providing a plausible link between the device's failure and Plaintiffs' injuries. As in *Elliott*, the complaint contains concrete, nonconclusory allegations describing how the device failed, placing this case squarely within the category of cases where Rule 12(b)(6) dismissal is inappropriate.

**MEMORANDUM DECISION AND ORDER - 4**

For these reasons, the strict liability and negligence claims allege a plausible device defect.

**B.     Failure to Warn**

Plaintiffs allege that Defendant failed to warn of three hazards: (1) the likelihood of degradation; (2) the risk that degradation could release loose bodies; and (3) the risk that such degradation could cause the repair to fail (Dkt. 6 ¶ 51). Defendant argues Plaintiffs do not explain why the warnings were inadequate. At this stage, however, Plaintiffs' identification of specific hazards that should have been disclosed is sufficient to plausibly plead a failure-to-warn theory under Idaho law. Plaintiffs allege a hazard, a failure to warn, and resulting injury, all with adequate factual detail.

**C.     Competing Defect Theories and Medical Causation**

Defendant asserts that rice bodies can arise from chronic inflammation and cites online dictionary entries and a radiology journal to suggest alternative causes. Plaintiffs correctly note that these materials are extrinsic, not incorporated into the FAC, subject to reasonable dispute, and not appropriate for judicial notice under Rule 201 of the Federal Rules of Evidence. In addition, the FAC itself alleges medical findings—MRI evidence of debris and intra-operative removal of approximately fifty loose bodies—that contradict Defendant's alternative causation theory (Dkt. 6 ¶¶ 16–18). This obvious causation dispute reinforces why considering extrinsic medical literature on a motion to dismiss is not helpful. Moreover, considering extrinsic medical articles would convert this motion into a motion for summary judgment. And even if considered, the possibility of alternative causes does not defeat plausibility at the pleading stage. Competing medical explanations are more appropriately addressed through expert discovery and, if necessary, summary judgment proceedings.

MEMORANDUM DECISION AND ORDER - 5

### D. Strict Liability as a Stand-Alone Cause of Action

Defendant argues strict liability is not a stand-alone cause of action. Plaintiffs correctly cite Idaho authority, including *Toner v. Lederle Lab'ys, a Div. of Am. Cyanamid Co.*, 732 P.2d 297 (Idaho 1987). There, the Idaho Supreme Court implicitly confirmed strict liability under Restatement (Second) of Torts § 402A is a separate and independent basis for recovery and is not merged with negligence concepts. *Toner*, 112 Idaho at 335–36. At this point, Plaintiffs may therefore plead strict liability as an independent claim.

### E. Count Two

Count Two combines negligent infliction of emotional distress (NIED) and loss of consortium (Dkt. 6 ¶¶ 57–63). Plaintiffs do not clearly identify in their FAC or their opposition if one or both of them is asserting the claims (*compare id*. at ¶ 61 ("Plaintiffs suffered . . .") *with* ¶ 62 ("injuries incurred by Mrs. Leete . . . caused . . . a loss of consortium")). Idaho law treats these as distinct theories, and the Court construes the FAC accordingly.[1]

Plaintiffs incorporate the duty allegations from earlier paragraphs (Dkt. 6 ¶ 49) and both Plaintiffs allege they suffered physical manifestations of harm because of their emotional distress (Dkt. 6 at ¶¶ 61). While Defendant relies heavily on *Schriver v. Raptosh*, 557 P.3d 398 (Idaho 2024), it only requires that a duty exist. Idaho already recognizes a broad duty imposed upon third parties to not cause injuries which result in loss of consortium damages: "any tortious act of the defendant which causes injury to a plaintiff's spouse can support a plaintiff's claim for loss of consortium." *Beebe v. North Idaho Day Surgery, LLC*, 526 P.3d 650, 662 (Idaho 2023). Thus, Defendant's argument that it does not owe a duty to the spouse of their intended medical product customer is not persuasive. Paragraph 61 of the FAC alleges emotional distress with physical

---

[1] Defendant makes no argument that the loss of consortium claims fail.

manifestations on behalf of "Plaintiffs." *Schriver* recognizes that NIED claims survive when accompanied by allegations of physical harm. Thus, both Plaintiffs have successfully alleged NIED claims.

## ORDER

IT IS ORDERED:

1. Defendant's Motion to Dismiss (Dkt. 13) is **DENIED**.

DATED: December 31, 2025

*Amanda K. Brailsford*
Amanda K. Brailsford
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 7